**TZEZEL BAGHOYAN**
A# 062-904-438
Imperial Regional Detention Facility
1572 Gateway Rd
Calexico, CA 92231
PRO SE

FILED

Jan 12 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ shellyy        DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

TZEZEL BAGHOYAN,

     Petitioner,

 v.

JAMISON MATUSZEWSKI, San Diego
Field Office Director, Immigration and
Customs Enforcement; JOSEPH SUAZO,
Calexico Assistant Field Office Director,
Immigration and Customs Enforcement;
WILLIAM DEREVERE, Facility Administrator,
Imperial Regional Detention Facility;
MATTHEW ALLEN, Senior Official
Performing the Duties of the Director of U.S.
Immigration and Customs Enforcement;
ALEJANDRO MAYORKAS, Secretary of
Homeland Security,

     Respondents.

Case No. **'23 CV 0071 TWR BGS**

**PETITION FOR WRIT
OF HABEAS CORPUS
PURSUANT TO
28 U.S.C. § 2241**

Tzezel Baghoyan ("Petitioner") respectfully petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention by Respondents, as follows:

## **INTRODUCTION**

1.      Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at the Imperial Regional Detention Facility ("Imperial") pending removal proceedings.

2.      Petitioner has been detained in immigration custody for 31 months even though no neutral decisionmaker—whether a federal judge or an immigration judge—has conducted a hearing to determine whether this lengthy incarceration is warranted based on danger or flight risk, the only two permissible bases for immigration detention prior to entry of an executable removal order.

3.      Petitioner submits the instant petition bringing forth two claims of relief for (1) prolonged detention without a constitutionally adequate hearing in violation of his Fifth Amendment Right to Due Process and (2) freedom from unlawful detention pursuant to his Fifth Amendment Right to Substantive Due Process.

4.      Petitioner therefore requests that this Court issue a writ of habeas corpus, to determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention, and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond.

5.      In the alternative, Petitioner requests that this Court issue a writ of habeas corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; (2) if the government cannot meet its

1

burden, the immigration judge orders Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond.

## JURISDICTION AND VENUE

6.    Petitioner is detained in the custody of Respondents at the Imperial Regional Detention Facility in Calexico CA.

7.    Jurisdiction is proper under 28 U.S.C. §§ 1331, 2241; the Suspension Clause, U.S. Const. art. I, § 2; and 5 U.S.C. § 702.

8.    Congress has preserved judicial review of challenges to prolonged immigration detention. *See Jennings v. Rodriguez*, _ U.S. _ , 2018 WL 1054878 at *7-*9 (Feb. 27, 2018)(holding that 8 U.S.C. §§ 1226(e), 1252(b)(9) do not bar review of challenges to prolonged immigration detention); *see also id.* at *44 (Breyer, J., dissenting). ("8 U.S.C. § 1252(b)(9), . . . by its terms applies only with respect to review of an order of removal") ("internal quotation marks and brackets omitted).

9.    Section 1252(f)(1) does not repeal this Court's authority to grant the relief Petitioner seeks because, *inter alia*, Petitioner is in removal proceedings. *See* 8 U.S.C. § 1252(f)(1) (exempting claims by "an individual alien against whom proceedings . . . have been initiated"); *Reno v. Am.-Arab Anti-Discrimination Comm*, 525 U.S. 471, 482 (1999) (Section 1252(f) "does not extend to individual cases").

10.    If Section 1252(f)(1) did bar the relief Petitioner seeks, it would violate the Suspension Clause.

11.    Even if otherwise applicable, Section 1252(f)(1) does not bar declaratory relief.

12.    Venue is proper in this District under 28 U.S.C. § 1391 because at least one Respondent is in this District, the Petitioner is detained in this District, and a substantial part of the events giving rise to the claims in this action took place in this District.

## PARTIES

13.    Petitioner, Tzezel Baghoyan, is a noncitizen currently detained by

1  Respondents pending removal proceedings.

2  14.    Respondent Jamison MATUSZEWSKI is the San Diego Field Office

3  Director for ICE Enforcement and Removal Operations ("ERO"), a federal law

4  enforcement agency within the U.S. Department of Homeland Security ("DHS"). The

5  San Diego Field Office Is responsible for, among other things, carrying out ICE's

6  immigration detention operations at Imperial Regional Detention Facility. Respondent

7  Matuszewski is a legal custodian of Petitioner.

8  15.    Defendant Joseph SUAZO is the Assistant Field Office Director for ICE

9  ERO in Calexico, California. Respondent Suazo is a legal custodian of Petitioner.

10  16.    Respondent William DEREVERE is the Facility Administrator of Imperial

11  Regional Detention Facility and is employed by the private corporation Management &

12  Training Corporation. Respondent DeRevere is the immediate physical custodian of

13  Petitioner.

14  17.    Respondent Matthew T. ALBENCE is the Deputy Director and Senior

15  Official Performing the Duties of the Director of ICE. Respondent Albence is

16  responsible for ICE's policies, practices, and procedures, including those related to the

17  detention of immigrants. Respondent Albence is a legal custodian of Petitioner.

18  18.    Respondent Alejandro MAYORKAS is the Secretary of DHS, an agency

19  of the United States with several components responsible for enforcing United States

20  immigration laws. Respondent Mayorkas is a legal custodian of Petitioner.

21  **STATEMENT OF FACTS**

22  19.    Petitioner is a native and citizen of Armenia . On or about February 19,

23  2013, Petitioner became a Legal Permanent Resident of the United States. On or about

24  June 11, 2020, the Department of Homeland Security initiated removal proceedings

25  against Petitioner through the issuance of a notice to appear ("NTA") which charged

26  Petitioner with removability under § 237(a)(2)(A)(iii) of the Immigration and

27  Nationality Act ("INA" or the "Act"), as amended, as an alien, at any time after

28  admission, having been convicted of an aggravated felony as defined in Section 101(a)

(43)(F) of the Act, a crime of violence (as defined in section 16 of Title 18, United States Code, but not including a purely political offense) for which the term of imprisonment ordered is at least one year. **Exhibit A**. Petitioner applied for Convention Against Torture ("CAT") relief. On July 9, 2021, an Immigration Judge ("IJ") denied the relief Petitioner sought and ordered him removed from the United States to Armenia. Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). The BIA dismissed Petitioner's appeal on October 29, 2021. Petitioner timely petitioned to the Court of Appeals for the Ninth Circuit ("Ninth Circuit") for review of the Board's decision. *See Baghoyan v. Garland*, Case No. 21-1111 (9th Cir.). Petitioner has been granted a temporary stay of removal pending review before the Ninth Circuit. Petitioner is currently detained by Respondents pending removal proceedings.

20.    Petitioner has been detained in DHS custody since June 11, 2020 at the Imperial Regional Detention Facility, a duration of confinement exceeding his time spent in state prison.

21.    Petitioner has been detained for 31 months, yet has not been provided a bond hearing before a neutral decision maker to determine whether his prolonged detention is justified based on danger or flight risk.

22.    Petitioner asserts that he has developed breathing complications due to the toxic air at the facility which has been a constant concern and which was the subject of a federal complaint filed by detained and outside advocates.[1]

23.    Petitioner asserts that he has been the subject of retaliation for filing complaints regarding the conditions of the facility. Petitioner asserts that the constant retaliation has also been the subject of a federal complaint filed by people detained at Imperial and by outside advocates.[2]

---

1 Kate Morrissey, *Immigration detainees say there's contaminated air, water at Imperial Regional Detention Facility,* The San Diego Union-Tribune, Jan. 28, 2022 at 3-4. https://www.sandiegouniontribune.com/news/immigration/story/2022-01-28/contaminated-air-water-imperial-regional-detention

2 Kate Morrissey, *Complaint alleges Calexico immigration detention officials use solitary confinement as retaliation,* The San Diego Union-Tribune, Sept. 14, 2022, available at https://www.sandiegouniontribune.com/news/immigration/story/2022-09-14/complaint-calexico-immigration-detention

24.     Petitioner asserts that the abuse of solitary confinement at Imperial has also been the subject of a federal lawsuit filed by a person detained at Imperial.[3]

## **LEGAL BACKGROUND**

25.     "' It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id*. at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restrain or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id*. at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious").

26.     Due process therefore requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restrain." *Id*. at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Id*.; *Demore*, U.S. at 528.

27.     Following *Zadvydas* and *Demore*, every circuit court of appeals to confront the issue has found either the immigration statutes or due process require a hearing for noncitizens subject to unreasonably prolonged detention pending removal proceedings. *See Sopo v. U.S. Attorney Gen*., 825 F.3d 1199 (11th Cir. 2016) (detention

3 Andrea Castillo, *ICE held a man in solitary confinement for more than a year. He's suing under a new California law*, Los Angeles Times, October 14, 2021, available at: https://www.latimes.com/california/story/2021-10-14/ice-lawsuit-california-solitary-confinement-detention-citizen

1   under 8 U.S.C. § 1226(c)); *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016) 8 U.S.C. §

2   1226(c)); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015) (8 U.S.C. § 1226(c));

3   *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060 (9th Cir. 2015) (8 U.S.C. 1226(c))

4   and 8 U.S.C. § 1225(b)); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011) (8

5   U.S.C. § 1226(c)); *Diouf v. Holder (Diouf II)*, 634 F.3d 1081 (8 U.S.C. § 1231(a)); *Ly*

6   *v. Hansen*, 531 F.3d 263 (6th Cir. 2003) (8 U.S.C. § 1226(c)) (requiring release when

7   mandatory detention exceeds a reasonable period of time).

8       28.    Recently, the Supreme Court held that the Ninth Circuit erred by

9   interpreting Sections 1226(c) and 1225(b) to require bond hearings as a matter of

10  statutory construction. *Jennings v. Rodriguez*, _ U.S._ , 2018 WL 1054878 at *10 (Feb.

11  27, 2018). Because the Ninth Circuit had not decided whether the Constitution itself

12  requires bond hearings in cases of prolonged detention, the Court remanded for the

13  Ninth Circuit to address the issue. *Id.* at *10. The majority opinion did not express any

14  views on the constitutional question, and left it to the lower courts to address the issue

15  in the first instance.

16      29.    Due process requires that the government provide bond hearings to

17  noncitizens facing prolonged detention. "The Due Process Clause foresees eligibility

18  for bail as part of due process" because "[b]ail is basic to our system of law." *Id.* at 28

19  (Breyer, J., dissenting) (internal quotations and citations omitted). While the Supreme

20  Court upheld the mandatory detention of a noncitizen under Section 1226(c) in

21  *Demore*, it did so based on the petitioner's concession of deportability and the Court's

22  understanding that detentions under 1226(c) are typically "brief." *Demore*, 538 U.S. at

23  522 n.6, 528. Where a noncitizen has been detained for a prolonged period or is

24  pursuing a substantial defense to removal or claim to relief, due process requires an

25  individualized determination that such a significant deprivation of liberty is warranted.

26  *Id.* at 532. (Kennedy, J., concurring) ("individualized determination as to his risk of

27  flight and dangerousness" may be warranted "if the continued detention became

28  unreasonable or unjustified"). *See also Jackson v. Indiana*, 406 U.S. 715, 733 (1972)

1  (detention beyond the "initial commitment" requires additional safeguards); *McNeil v.*

2  *Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) ("lesser safeguards may be

3  appropriate" for "shortterm confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86

4  (1978) (in Eighth Amendment context, "the length of confinement cannot be ignored in

5  deciding whether [a] confinement meets constitutional standards").

6      30.    Consistent with this view, the federal courts have made clear that

7  prolonged detention pending removal proceedings without a bond hearing likely

8  violates due process. *See supra*; *Jennings*, 2018 WL 1054878 at *37 (Breyer, J,

9  dissenting) ("an interpretation of the statute before us that would deny bail proceedings

10 where detention is prolonged would likely mean that the statute violates the

11 Constitution"). In addition, numerous circuits and district courts have expressly found

12 that the Constitution requires bond hearings in cases of prolonged detention. *See, e.g.,*

13 *Diop*, 656 F.3d at 233; *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 544-50

14 (S.D.N.Y. 2014); *Monestime v. Reilly*, 704 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2010).

15     31.    Detention without a bond hearing is unconstitutional when it exceeds six

16 months. *See Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under

17 Section 1226(c), which last "roughly a month and a half in the vast majority of cases in

18 which the alien chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously

19 doubted the constitutionality of detention for more than six months").

20     32.    The recognition that six months is a substantial period of confinement—

21 and is the time after which additional process is required to support continued

22 incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late

23 18th century in America crimes triable without a jury were for the most part punishable

24 by no more than a six-months prison term . . ." *Duncan v. State of La.*, 391 U.S. 145,

25 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six

26 months to be the limit of confinement for a criminal offense that a federal court may

27 impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S.

28 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a

1    benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent*

2    *Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for

3    confinement without individualized inquiry for civil commitment). The Court has

4    likewise recognized the need for bright line constitutional rules in other areas of law.

5    *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (14 days for re-interrogation

6    following invocation of Miranda rights); *Cty. of Riverside v. McLaughlin*, 500 U.S. 44,

7    55-56 (1991) (48 hours for probable cause hearing).

8        33.    Even if a bond hearing is not required after six months in every case, at a

9    minimum, due process requires a bond hearing after detention has become

10   unreasonably prolonged. *See Diop*, 656 F.3d at 234. Courts that apply a reasonableness

11   test have considered three main factors in determining whether detention is reasonable.

12   First, courts have evaluated whether the noncitizen has raised a "good faith" challenge

13   to removal—that is, the challenge is "legitimately raised" and presented "real issues."

14   *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015).[4]

15   Second, reasonableness is a "function of length of the detention," with detention

16   presumptively unreasonable if it lasts six months to a year. *Id.* at 477-78; *accord Sopo*,

17   825 F.3d at 1217-18. Third, courts have considered the likelihood that detention will

18   continue pending future proceedings. *Chavez-Alvarez*, 783 F.3d at 478 (finding

19   detention unreasonable after nine months of detention, when the parties could "have

20   reasonably predicted that Chavez-Alvarez's appeal would take a substantial amount of

21   time, making his already lengthy detention considerably longer"); *Sopo*, 825 F.3d at

22   128; *Reid*, 819 F.3d at 500.

---

4  Notably, "aliens should [not] be punished for pursuing avenues of relief and appeals." *Sopo*, 825
F.3d at 1218 (citing *Ly*, 351 F.3d at 272). Thus, courts should not count a continuance against the
noncitizen when he obtained it in good faith to prepare his removal case. Instead, only "[e]vidence
that the alien acted in bad faith or sought to deliberately slow the proceedings"—for example, by
"[seeking] repeated or unnecessary continuances, or [filing] frivolous claims and appeals"— "cuts
against" providing a bond hearing. *Id.*; *see also Chavez-Alvarez*, 783 F.3d at 476; *Ly*, 351 F.3d at
272.

34.    At a bond hearing, due process requires certain minimal protections to ensure that a noncitizen's detention is warranted: the government must bear the burden of proof by clear and convincing evidence to justify continued detention, taking into consideration available alternatives to detention; and if the government cannot meet its burden, the noncitizen's ability to pay a bond must be considered in determining the appropriate conditions of release.

35.    To justify prolonged immigration detention, the government must bear the burden of proof by clear and convincing evidence that the noncitizen is a danger or a flight risk. that the noncitizen is a danger or flight risk. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). Where the Supreme Court has permitted civil detention in other contexts, it has relied on the fact that the Government bore the burden of proof at least by clear and convincing evidence. *See United States v. Salermo*, 481 U.S. 739, 750, 752 (1987) (upholding pre-trial detention where "full-blown adversary hearing," requiring "clear and convincing evidence" and "neutral decisionmaker"); *Faucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (striking down civil detention scheme that placed burden on the detainee); *Zadvydas*, 533 U.S. at 692 (finding post-final-order custody review procedures deficient because, inter alia, they placed burden on detainee).

36.    The requirement that the government bear the burden of proof by clear and convincing evidence is also supported by application of the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976). First, prolonged incarceration deprives noncitizens of a "profound" liberty interest. *See Diouf II*, 634 F.3d at 1091-92 (9th Cir. 2011). Second, the risk of error is great where the government is represented by trained attorneys and detained noncitizens are often unrepresented and frequently lack English proficiency. *See Santosky v. Kramer*, 455 U.S. 745, 763 (1982) (requiring clear and convincing evidence at parental termination proceedings because "numerous factors combine to magnify the risk of erroneous factfinding" including that "parents subject to termination proceedings are often poor, uneducated, or members of minority groups" and "[t]he State's attorneys usually will be experts on

1    the issues contested"). Moreover, detainees are incarcerated in prison-like conditions

2    that severely hamper their ability to obtain legal assistance, gather evidence, and

3    prepare for a bond hearing. *See infra* ¶ 42. Third, placing the burden on the

4    government imposes minimal cost or inconvenience, as the government has access to

5    the noncitizen's immigration records and other information that it can use to make its

6    case for continued detention.

7        37.    Due process also requires consideration of alternatives to detention. The

8    purpose of immigration detention is to ensure a noncitizen's appearance during

9    removal proceedings. *Zadvydas*, 533 U.S. at 697. Detention is not reasonably related to

10   this purpose if there are alternative conditions of release that could mitigate risk  of

11   flight. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). ICE's alternatives to detention

12   program— the Intensive Supervision Appearance Program—has achieved

13   extraordinary success in ensuring appearance at removal proceedings, reaching

14   compliance rates close to 100 percent. *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th

15   Cir. 2017) (observing that ISAP "resulted in 99%  attendance rate at all EOIR hearings

16   and 95% attendance rate at final hearings"). It follows that alternatives to detention

17   must be considered in determining whether prolonged incarceration is warranted.

18       38.    Due process likewise requires consideration of a noncitizen's ability to pay

19   a bond. "Detention of an indigent 'for inability to post money bail' is impermissible if

20   the individual's 'appearance at trial could  reasonably be assured by one of the alternate

21   forms of release.'" *Id*. at 990 (quoting *Pugh v. Rainwater*, 572 F.2d 1053, 1058 (5th Cir.

22   1978) (en banc)). It follows that—in determining the appropriate conditions of release

23   for immigration detainees—due process requires "consideration of financial

24   circumstances and alternative conditions of release" to prevent against detention based

25   on poverty. *Id*.

26       39.    Evidence about immigration detention and the adjudication of removal

27   cases provide further support for the due process right to a bond hearing in cases of

28   prolonged detention.

40.    Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 2018 WL 1054878 at *27 (Breyer, J., dissenting). Among a class of immigration detainees in the Central District of California held for at least six months ("*Rodriguez* class"), the average length of detention was over a year, with many people held far longer. In numerous cases, noncitizens are incarcerated for years until winning their immigration cases. *Id.* (identifying cases of noncitizens detained for 813, 608, and 561 days until winning their cases). For noncitizens who have some criminal history, their immigration detention often dwarfs the time spent in criminal custody, if any. *Id.* ("between one-half and two-thirds of the class served sentences less than six months").

41.    Noncitizens are detained for lengthy periods because they pursue meritorious claims. Among the *Rodriguez* class, 40 percent of noncitizens subject to Section 1226(c) won their cases, and two-thirds of asylum seekers subject to Section 1225 won asylum. *See id.* Detained noncitizens are able to succeed at these dramatically high rates despite the challenges of litigation in detention, particularly for the majority of detainees who lack legal counsel. *See* Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 36 (2015) (reporting government data showing that 86% of immigration detainees lack counsel).

42.    Immigration detainees face severe hardships while incarcerated. Immigration detainees are held in lock-down facilities, with limited freedom of movement and access to their families: "the circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 2018 WL 1054878 at *28 (Breyer, J., dissenting); *accord Chavez-Alvarez*, 783 F.3d at 478; *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo*, F.3d at 1218, 1221. "And in some cases the conditions of their confinement are inappropriately poor." *Jennings*, 2018 WL 1054878 at *28 (Breyer, J., dissenting) (citing Dept. of Homeland Security (DHS), Office of Inspector General (OIG), *DHS OIG Inspection Cites Concerns With Detainee*

*Treatment and Care at ICE Detention Facilities* (2017) (reporting in-stances of invasive procedures, substandard care, and mistreatment. e.g., indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock dock for sharing a cup of coffee with another detainee.)).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

43.    Petitioner re-alleges and incorporates by reference the paragraphs above.

44.    The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law." U.S. Const. Amend. V.

45.    To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk.

46.    For these reasons, Petitioner's ongoing detention without a hearing violates due process.

### SECOND CLAIM FOR RELIEF

### FREEDOM FROM UNLAWFUL DETENTION PURSUANT TO FIFTH AMENDMENT RIGHT TO SUBSTANTVE DUE PROCESS

47.    Petitioner re-alleges and incorporates by reference the paragraphs above.

48.    The Fifth Amendment of the U.S. Constitution guarantees that civil detainees, including all immigrant detainees, may not be subject to punishment. The Federal government violates this substantive due process right when it subjects a civil detainee to an unreasonably prolonged period of civil incarceration without a hearing

before a neutral decisionmaker.

49.     For these reasons, Petitioner's ongoing prolonged detention without a bond hearing violates his Fifth Amendment Right to Substantive Due Process.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

1)     Assume jurisdiction over this matter;

2)     Issue a Writ of Habeas Corpus; hold a hearing before this Court if warranted; determine that Petitioner's detention is not justified because the government has not established by clear and convincing evidence that Petitioner presents a risk of flight or danger in light of available alternatives to detention; and order Petitioner's release, with appropriate conditions of supervision if necessary, taking into account Petitioner's ability to pay a bond;

3)     In the alternative, issue a Writ of Habeas Corpus and order Petitioner's release within 30 days unless Respondents schedule a hearing before an immigration judge where: (1) to continue detention, the government must establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, even after consideration of alternatives to detention that could mitigate any risk that Petitioner's release would present; and (2) if the government cannot meet its burden, the immigration judge order Petitioner's release on appropriate conditions of supervision, taking into account Petitioner's ability to pay a bond;

4)     Issue a declaration that Petitioner's ongoing prolonged detention violates the Due Process Clause of the Fifth Amendment and the Fifth Amendment Right to Substantive Due Process;

5)     Grant such relief as the Court deems just and proper.

## **VERIFICATION**

I, Tzezel Baghoyan ("Petitioner"), do certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

DATED: January 08, 2023



Tzezel Baghoyan
A# 062-904-438

# EXHIBIT

# "A"

DEPARTMENT OF HOMELAND SECURITY
# NOTICE TO APPEAR

DOB: 04/29/1995

Event No: IMP2004000028

---

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 368318758

In the Matter of:

File No: 062 904 438

Respondent: **TSEZEL BAGHOYAN AKA: BAGHOYAN, TSEZEL ARTEM** _____ currently residing at:

See Continuation Page Made a Part Hereof

(760) 337-7900

(Number, street, city, state and ZIP code)          (Area code and phone number)

☐ You are an arriving alien.

☐ You are an alien present in the United States who has not been admitted or paroled.

☒ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

**1. You are not a citizen or national of the United States;**

**2. You are a native of Armenia and a citizen of Armenia;**

**3. You were admitted into the United States at Los Angeles, California on or about February 19, 2013 as a Legal Permanent Resident (IR2);**

**4. You were, on September 13, 2017, convicted in the Superior Court of California, County of Los Angeles, for the offense of INJURING A SPOUSE/COHABITANT, BOYFRIEND/GIRLFRIEND, in violation of Section 273.5 (A) of the California Penal Code; See Continuation Page Made a Part Hereof**

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

**Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(F) of the Act, a crime of violence (as defined in section 16 of Title 18, United States Code, but not including a purely political offense) for which the term of imprisonment ordered is at least one year.**

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:     ☐ 8CFR 208.30     ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

2409 La Brucherie Road Imperial CA 92251, EOIR Imperial, CA

(Complete Address of Immigration Court, including Room Number, if any)

on ___To be set.___ at ___To be set.___ to show why you should not be removed from the United States based on the
(Date)          (Time)

charge(s) set forth above.      V 4373 ESPINOZA - SDDO

(Signature and Title of Issuing Officer) (Sign in ink)

Date: **JUN 1 1 2020** _____

EL CENTRO, CALIFORNIA

(City and State)

---

DHS Form I-862 (2/20)

**Notice to Respondent**

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

R. CANTUA, DO
#4910

_(Signature and Title of Immigration Officer) (Sign in ink)_

_(Signature of Respondent) (Sign in ink)_

Date: JUL 0 8 2020

---

### Certificate of Service

This Notice To Appear was served on the respondent by me on JUL 0 8 2020 in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person   [ ] by certified mail, returned receipt # _____ requested   [ ] by regular mail
[ ] Attached is a credible fear worksheet.
[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **ENGLISH** _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_(Signature of Respondent if Personally Served) (Sign in ink)_

RAFAEL CANTUA - DO
_(Signature and Title of officer) (Sign in ink)_

DHS Form I-862 (2/20)

Page 2 of 4

Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

**U.S. Department of Homeland Security**          **Continuation Page for Form** I-862

| Alien's Name | File Number | Date |
|---|---|---|
| BAGHOYAN, TSEZEL | 062 904 438<br>Event No: IMP2004000028 | JUN 1 1 2020 |

THE SERVICE ALLEGES THAT YOU:
----------------------------

5. For this offense, you were sentenced to a term of imprisonment of three (3) years;


CURRENTLY RESIDING AT:
----------------------

IMPERIAL REGIONAL DETENTION FACILITY 1572 GATEWAY RD CALEXICO,CALIFORNIA, 92231

| Signature | Title |
|---|---|
| V 4273 ESPINOZA | SDDO |

4 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

DEPARTMENT OF HOMELAND SECURITY
## NOTICE OF CUSTODY DETERMINATION

Alien's Name: BAGHOYAN, TSEZEL

A-File Number: 062 904 438

Date: 06/09/2020

Event ID: IMP2004000028

Subject ID: 368318758

---

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

[X] Detained by the Department of Homeland Security.

[ ] Released (check all that apply):

    [ ] Under bond in the amount of  $ _____

    [ ] On your own recognizance.

    [ ] Under other conditions. [Additional document(s) will be provided.]

| | |
|---|---|
| ESPINOZA, V 4373 | 06/09/2020 03:27 PM |
| Name and Signature of Authorized Officer | Date and Time of Custody Determination |
| SDDO | ICE U.S. Immigration & Customs Enforcement 2051 N. Waterman Avenue Suite 101 EL CENTRO, CA US 92243 |
| Title | Office Location/Address |

---

You may request a review of this custody determination by an immigration judge.

    [X] I acknowledge receipt of this notification, and

        [X] I **do** request an immigration judge review of this custody determination.

        [ ] I **do not** request an immigration judge review of this custody determination.

| | |
|---|---|
| Signature of Alien | JUL 0 6 2020 |
| | Date |

---

The contents of this notice were read to BAGHOYAN, TSEZEL in the ENGLISH language.

    (Name of Alien)         (Name of Language)

| | |
|---|---|
| CANTUA, RAFAEL | |
| Name and Signature of Officer | Name or Number of Interpreter (if applicable) |
| DO | |
| Title | |

---

DHS Form I-286 (1/14)

Page 1 of 1





TZEZEL BAGHOYAN
A# 062-904-438
IMPERIAL REGIONAL DETENTION FACILITY
1572 GATEWAY ROAD
CALEXICO, CA 92231

LEGAL

MAIL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
OFFICE OF THE CLERK
333 W. Broadway  Suite # 420
San Diego, CA 92101

